United States District Court
Southern District of Texas
**ENTERED**
June 22, 2020
David J. Bradley, Clerk

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## BROWNSVILLE DIVISION

| | | |
|---|---|---|
| J.V. b/n/f JOSE VEGA, et al., | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | Case No. 1:18-cv-008 |
| | § | |
| BROWNSVILLE INDEPENDENT | § | |
| SCHOOL DISTRICT, | § | |
|    Defendant. | § | |

## <u>OPINION AND ORDER</u>

The Court is in receipt of Plaintiffs' "First Amended Complaint" (hereinafter, Plaintiffs' "Amended Complaint"). Dkt. No. 55. For the reasons provided below, Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to allow the Plaintiffs to exhaust their state administrative remedies.

## I.    Background and Procedural History

### A.    Factual Background

Plaintiffs Jose and Margarita Vega (collectively, the "Plaintiffs") bring this civil action on behalf of their minor son, J.V., against Defendant Brownsville Independent School District (hereinafter, "BISD"). Dkt. No. 55. Plaintiffs assert that BISD violated J.V.'s right to a safe and non-hostile educational environment, reasonable accommodations, and freedom from discrimination. *See id.* at 8–10. In support of their claims for relief, Plaintiffs allege the following:

1.    J.V. was born in 2004 and diagnosed with cerebral palsy. *Id.* at 4.

2.     Because of his cerebral palsy, his spine is curved, one leg is shorter than the other, he has limited motor skills, and he is physically restricted to a wheelchair.  *Id.*

3.     J.V. requires the assistance of a paraprofessional to use the restroom and perform other activities; he also wears diapers to prevent accidents.  *Id.*

4.     J.V. cannot read but can make some audible sounds and uses a box to communicate.  *Id.*

5.     Because his development is delayed, he receives physical and speech therapy, along with other supportive services at school.  *Id.*

6.     On March 29, 2016, J.V. went on a school field trip to the Gladys Porter Zoo in Brownsville, Texas; afterwards, the students went to the Golden Corral restaurant.  *Id.* at 4.

7.     While there, J.V.'s paraprofessional, Enrique Rodriguez ("Rodriguez"), helped J.V. to use the restroom.  *See id.* at 4–5.

8.     Later that day, J.V.'s mother received a phone call from the school nurse that J.V.'s leg and knee were visibly swollen.  *Id.* at 5.

9.     When J.V. arrived home from school, his mother observed that his leg was swollen, and J.V. cried out in pain.  *Id.*

10.     J.V.'s parents called an ambulance, and the responding EMS personnel stated that his leg was broken.  *Id.*

11.     Doctors determined that J.V. suffered a fractured femur.  *Id.*

12.     He underwent surgery the next day.  *Id.*

13.     When asked about his leg, J.V. said that Rodriguez had injured him.  *Id.*

## B.     Procedural History

### 1.     *Special Education Due Process Hearing.*

On August 21, 2017, Plaintiffs filed a "First Original Petition and Request for Special Education Due Process Hearing" (hereinafter, Plaintiffs' "Original Petition") with the Texas Education Agency ("TEA").  Dkt. No. 63 at 87.  In their Original Petition, Plaintiffs alleged that BISD failed to investigate the incident and notify them of their procedural and substantive rights.  *Id.* at 90.  Plaintiffs asserted that BISD violated J.V.'s rights under the U.S. Constitution, the Individuals with Disabilities Education Act ("IDEA"), § 504 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), Title II of the Americans with Disabilities Act ("ADA"), and Title IX of the Education Amendments of 1972 ("Title IX").  *Id.* at 95–99.

The TEA appointed Special Education Hearing Officer David Berger (hereinafter, the "SEHO") to conduct an impartial due process hearing to resolve the dispute.  Dkt. No. 63 at 86.  BISD filed a "Response to Petition" on September 1, 2017.  *Id.* at 65.  In its Response to Petition, BISD requested that the SEHO: (1) dismiss Plaintiffs' Original Petition; (2) find that BISD provided a free appropriate public education as required by the IDEA; and (3) find that he lacked jurisdiction to hear Plaintiffs' claims brought under the U.S. Constitution, the Rehabilitation Act, the ADA, and Title IX.  *Id.* at 65.

The SEHO issued an order on September 21, 2017.  Dkt. No. 63 at 35.  In his order, the SEHO determined that he lacked jurisdiction to hear claims outside the

scope of the IDEA.  *Id.* at 35–39.  He explained that his jurisdiction "is limited to matters relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." *Id.* Therefore, the SEHO dismissed several of Plaintiffs' requests for relief that fell outside the scope of the IDEA.  *Id.*

### 2.    *Rule 11 Agreement.*

On November 21, 2017, the parties filed a "Notice of Rule 11 Agreement" (hereafter, the parties' "Rule 11 Agreement").  Dkt. No. 63 at 14. In their Rule 11 Agreement, the parties advised the SEHO that they agreed that the "gravamen" of Plaintiffs' claims addressed "civil rights violations" and not IDEA violations.  *See* Dkt. No. 63 at 18.   The Plaintiffs also agreed that BISD provided J.V. with a free appropriate public education "pursuant to IDEA and Section 504." *Id.*  Furthermore, under the Rule 11 Agreement, Plaintiffs agreed to submit a "Motion to Nonsuit" to the SEHO and subsequently file their "Original Complaint" in federal court.  *Id.*  On January 2, 2018, the SEHO granted Plaintiffs' motion; all claims brought under the IDEA were dismissed without prejudice.  Dkt. No. 63 at 4.

### 3.    *Federal Court Proceedings.*

On January 12, 2018, Plaintiffs filed their "First Original Complaint" (hereinafter, Plaintiffs' "Original Complaint") in this Court.  Dkt. No. 1.  Plaintiffs' Original Complaint raised numerous causes of action against BISD and Rodriguez. Plaintiffs asserted that one or both Defendants violated J.V.'s rights under: 42 U.S.C. § 1983; the First, Fourth, and Fourteenth Amendments; the Rehabilitation Act; the

ADA, and Title IX.  *Id.* at 10–16.  Plaintiffs further argued that BISD ratified the acts and omissions of its staff members.  *Id.*

On February 3, 2020, Plaintiffs filed the instant Amended Complaint.  Dkt. No. 55.  In their Amended Complaint, Plaintiffs' allege various claims only against BISD, the sole defendant.  *Id.*  Plaintiffs argue that BISD: (1) failed to provide various supportive services; (2) subjected J.V. to discrimination; (3) failed to accommodate J.V. and provide him with a safe environment pursuant to § 504 of the Rehabilitation Act; and (4) failed to provide J.V. with disability accommodations pursuant to Title II of the ADA, or modify existing accommodations.  *Id.*  Plaintiffs further allege that BISD is vicariously liable for the acts and omissions of its staff members.  *Id.*

On February 12, 2020, BISD filed its "Amended Answer."  Dkt. No. 58.  BISD argues that, to the extent that J.V. was injured, BISD did not cause his injury.  Rather, BISD argues that J.V.'s physical condition caused his injury.  *Id.*  BISD also contends that the parties' Rule 11 Agreement forecloses Plaintiffs from raising IDEA and Rehabilitation Act claims in federal court. *See id.*

Upon receiving Plaintiffs' Amended Complaint, the Court ordered the parties to submit briefing regarding the Court's subject matter jurisdiction.  Dkt. No. 60.  Plaintiffs filed a "Brief on Jurisdiction" (hereinafter, Plaintiffs' "Brief").  Dkt. No. 62.  BISD filed a response to Plaintiffs' Brief (hereinafter, Defendant's "Response").[1]  Dkt. No. 65.

---

[1] The briefing submitted by BISD's counsel does not comply with the Court's Order.  The Court ordered the parties to file an advisory addressing the Court's subject matter jurisdiction.  The briefing submitted by BISD's counsel is less than four pages and fails to adequately address the subject.  *See* Dkt. No. 65.

## II.    Legal Standards

### A.    IDEA Requirements

The IDEA requires states to provide a "free appropriate public education" ("FAPE") to children with disabilities.  20 U.S.C. § 1412(a)(1)(A).  The purpose of the IDEA is to provide all disabled children the availability of a free appropriate public education that "emphasizes special education and related services designed to meet their unique needs."  20 U.S.C. § 1400(d)(1)(A).  The IDEA, in turn, "requires states and local education agencies receiving federal IDEA funds to make a FAPE available to children with certain disabilities between the ages of 3 and 21."  *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005) (en banc).  Moreover, states receiving federal funding under the IDEA must provide a FAPE to each disabled child within its boundaries and ensure that the education received is "in the least restrictive environment consistent with the disabled student's needs."  *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 247 (5th Cir. 1997).  A FAPE consists of "special education and related services" that are individually tailored to meet a child's unique educational needs, along with sufficient "supportive services" to help the child benefit from instruction.  *See Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748–49, 197 L. Ed. 2d 46 (2017) (citing 20 U.S.C. §§ 1401(9), (26), (29)).  Creating an "Individualized Education Plan" ("IEP") for each student is an essential part of providing a FAPE.  *Fry,* 137 S. Ct. at 753.

States that receive funding through the IDEA must establish and maintain procedures to resolve disputes over the adequacy of a disabled student's

education.  20 U.S.C. § 1415(a) (Agencies must "ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provisions of a free appropriate public education by such agencies.").  The IDEA provides a mechanism for any party to file a complaint, which forces the local education agency to hold a preliminary meeting to resolve the complaint.  20 U.S.C. §§ 1415(b)(6), (f)(1)(B)(i).  The complaint proceeds through a state administrative process that consists of an impartial "due process hearing" to resolve the complaint, which is conducted by a local or state education agency.  20 U.S.C. § 1415(f)(1)(A).  Furthermore, at the state's expense, mediation is also provided to resolve the complaint.  20 U.S.C. §§1415(e)(1), (e)(2)(D).

At the end of the administrative process, a party that is "aggrieved by the findings and decision" may bring an IDEA claim in federal court.  20 U.S.C. § 1415(i)(2).  The party that files a federal complaint must do so within "90 days from the date of the decision of the hearing officer."  20 U.S.C. § 1415(i)(2)(B).  The IDEA requires administrative exhaustion before filing an action in federal court.  20 U.S.C. § 1415(l).  A district court reviewing a state hearing officer's decision in a due process hearing must accord due weight to the hearing officer's findings but must reach an independent decision based on a preponderance of the evidence.  *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 347 (5th Cir. 2000), *cert. denied*, 531 U.S. 817 (2000).  The district court's review is essentially *de novo*.  *Id.*

**B.      Federal Rule of Civil Procedure 12(h)(3)**

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 378, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (internal citations omitted).  Subject matter jurisdiction refers to a court's power to hear a case.  *Morrison v. Nat'l Austl. Bank Ltd.*, 561 U.S. 247, 254, 130 S. Ct. 2869, 177 L. Ed. 2d 535 (2010).  Federal courts have limited jurisdiction and must assume a case falls outside of its jurisdiction, unless the party that seeks federal jurisdiction proves otherwise.  *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), *cert. denied*, 534 U.S. 993 (2001) (citing *Kokkonen*, 511 U.S. at 377).

A court must dismiss an action when it lacks subject matter jurisdiction.  FED. R. CIV. P. 12(h)(3).  A court has an independent duty, at any level of the proceedings, to determine whether it has subject matter jurisdiction over a case.  *Ruhgras AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S. Ct. 1563, 143 L. Ed. 2d 760 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative even at the highest level.");  *McDonal v. Abbott Labs.*, 408 F.3d 177, 182 n. 5 (5th Cir. 2005) (A "federal court may raise subject matter jurisdiction *sua sponte*.") (citation omitted).  Likewise, "subject matter jurisdiction cannot be created by waiver or consent."  *Howery*, 243 F.3d at 919.  "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."  *CleanCOALition v. TXU Power*, 536 F.3d 469, 473 (5th Cir.

2008) (quoting *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998)).

## III.    Discussion

In their Amended Complaint, Plaintiffs argues that BISD: (1) failed to provide various supportive services; (2) subjected J.V. to discrimination; (3) failed to accommodate J.V. and provide him with a safe environment pursuant to § 504 of the Rehabilitation Act; and (4) failed to provide J.V. with disability accommodations pursuant to Title II of the ADA, or modify existing accommodations.  Dkt. No. 55 at 8–10.  Plaintiffs further claim that BISD is vicariously liable for the acts and omissions of its staff members.  *Id.*

The Court has an independent duty to examine its subject matter jurisdiction and may raise the issue *sua sponte*.  *See McDonal*, 408 F.3d at 182 n. 5.  Plaintiffs removed Rodriguez and various claims related to civil rights from their Amended Complaint.  It appears that their remaining claims address accommodations and supportive services which may overlap with the IDEA.  Specifically, prior to filing in this Court, Plaintiffs voluntarily dismissed their claims at the administrative level based on the SEHO only having jurisdiction to hear claims arising under the IDEA.

The Court, therefore, must examine whether Plaintiffs' Amended Complaint contains claims that arise under the IDEA.  "[A] complaint based on [the IDEA] is not a justiciable controversy until the plaintiff has exhausted his administrative remedies or proved that exhaustion would be futile or inadequate."  *Gardner v. Sch.*

*Bd. Caddo Parish*, 958 F.2d 102, 112 (5th Cir. 1992).  Absent an exception, Plaintiffs'

failure to exhaust their state administrative remedies deprives this Court of subject

matter jurisdiction.  *See Wood v. Katy Indep. Sch. Dist.*, No. H-09-1390, 2010 WL

11417849, at *3 (S.D.Tex. Sept. 27, 2010); *Hooker v. Dallas Indep. Sch. Dist.*, No. 3:09-

CV-1289-D, 2010 WL 4025877, at *6 (N.D.Tex. Oct. 13, 2010) ("The exhaustion

requirement is not limited to claims brought under the IDEA.").

## A.      Plaintiffs' Section 504 and ADA Claims

A party must first exhaust the IDEA's administrative process before bringing

claims under other statutes which overlap with the IDEA.  *See Fry,* 137 S. Ct. at 750

("[A] plaintiff bringing suit under the ADA, Rehabilitation Act, or similar laws must

in certain circumstances–that is, when 'seeking relief that is also available under' the

IDEA–first exhaust the IDEA's administrative procedures."); *Reyes v. Manor Indep.*

*Sch. Dist.*, 850 F.3d 251, 256 (5th Cir. 2017) ("The IDEA requires administrative

exhaustion not just of claims arising under it, but also of Rehabilitation Act claims

that overlap with the IDEA.").  Section 1415(l) allows non-IDEA claims to be brought

in federal court, but only after the IDEA administrative procedures have been fully

exhausted:

> Nothing in this chapter shall be construed to restrict or limit the rights,
> procedures, and remedies available under the Constitution, the
> Americans with Disabilities Act of 1990, title V of the Rehabilitation Act
> of 1973, or other Federal laws protecting the rights of children with
> disabilities, except that before filing of a civil action under such laws
> seeking relief that is also available under this subchapter, the
> procedures under subsection (f) and (g) shall be exhausted to the same
> extent as would  be required had the action been brought under this
> subchapter.

20 U.S.C. § 1415(l).  Said another way, exhaustion is required for claims brought under § 504 of the Rehabilitation Act and Title II of the ADA when a plaintiff seeks "relief for the denial of a free appropriate public education."  *See Fry*, 137 S. Ct. at 754–55.  The activation of § 1415(l)'s exhaustion requirement depends on whether the suit seeks redress for a denial of a FAPE, and "[i]f a lawsuit charges such a denial, the plaintiff cannot escape § 1415(l) merely by bringing her suit under a statute other than the IDEA."  *Id.* at 754.  However, a complaint that seeks relief, independent of any FAPE denial, is not subject to § 1415(l)'s exhaustion requirement.  *Id.*  Therefore, in determining whether a plaintiff's complaint seeks relief for a denial of a FAPE, the Court must "look to the substance, or gravamen" of the complaint.  *Id.* at 752.  This inquiry looks to the "substance, not surface."  *Id.* at 755.

To determine whether the gravamen of a complaint seeks redress for a denial of a FAPE under the IDEA as opposed to a right under § 504 of the Rehabilitation Act or Title II of the ADA, the Court must examine two hypothetical questions:

> First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school–say, a public theater or library?  And second, could an *adult* at the school–say, an employee or visitor–have essentially the same grievance?

*Fry*, 137 S. Ct. at 756 (emphasis in original) ("But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so.").  Similarly, a plaintiff's reliance on the IDEA's administrative remedies is a strong indicator that the gravamen of his complaint is an IDEA claim based on the denial of a FAPE.  *Id.* at 757.

Some courts have held that "[t]he IDEA should not be construed so broadly that any injury a disabled student suffers in school is automatically subject to the IDEA." *Pagan-Negron v. Seguin Indep. Sch. Dist.*, 974 F. Supp. 2d 1020, 1028 (W.D.Tex. 2013); *Pendergast as Next Friends of L.P. v. Wylie Indep. Sch. Dist.*, No. 4:18-CV-00020-ALM-KPJ, 2018 WL 6710034, at *5 (E.D.Tex. Dec. 4, 2018) (same). It is important to examine whether "the substance of the plaintiff's [tort] claim is unlikely to involve the adequacy of special education–and thus is unlikely to require exhaustion." *Fry,*137 S. Ct. at 756.

Section 504 of the Rehabilitation Act prohibits discrimination by recipients that receive federal funding. The relevant part of § 504 provides that "[n]o otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Similarly, Title II of the ADA prohibits discrimination involving public services. The relevant part of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

The Court is limited to the live pleadings filed in this case; specifically, the Court is limited to those claims raised in Plaintiffs' Amended Complaint.[2] Plaintiffs

---

[2] In their Amended Complaint, Plaintiffs mention incidents of assaults, bullying, and harassment. *See* Dkt. No. 55. However, Plaintiffs do not provide any information to support

bring unclear and somewhat confusing § 504 and ADA claims alleging that BISD: (1) failed to conduct an investigation regarding J.V.'s injury; (2) failed to provide notice to the parents about their procedural rights; (3) "failed to provide [J.V.] a safe and non-hostile educational environment;" (4) violated [J.V.'s] right to privacy and bodily integrity; (5) "failed and refused to reasonably accommodate and modify the services needed by [J.V.] based on his disability;" and (6) engaged in discrimination. *See* Dkt. No. 55 at 6–9.

### 1.    *Whether the Alleged Conduct Could be Raised Outside of School?*

In determining whether Plaintiffs' claims fall under the IDEA, the Court must apply the *Fry* framework.  Under the first prong of the two-part test, the Court must ask "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school[?]"  *Fry*, 137 S. Ct. at 756 (emphasis in original).  Plaintiffs allege that BISD is vicariously liable for J.V.'s injury and Rodriguez's "acts and omissions" while serving as J.V.'s paraprofessional. Dkt. No. 55 at 5, 10.  Critically, Plaintiffs claim that BISD "failed and refused to reasonably accommodate and modify the services needed by [J.V.] based upon his disability."  *Id.* at 10.  It appears, then, that Plaintiffs allege that BISD did not modify or provide J.V. with accommodations, supportive services, and counseling.  *Id.* at 6, 9–10.

---

those allegations; instead, they appear to be remnants from Plaintiffs' Original Complaint. Therefore, the Court does not construe them as claims, since they are not formally raised in Plaintiffs' live pleadings.

To the extent Plaintiffs allege that BISD failed to supervise or train its staff, those claims are subject to the IDEA's administrative exhaustion requirement. Plaintiffs "could not state a viable claim under the ADA or Section 504 against a library or theater based on its failure to train personnel on how to instruct or handle special needs students" because a claim "concerning teacher training and remedial measures fall under the umbrella of claims that require IDEA exhaustion." *P.G. by and through R.G. v. Rutherford Cnty. Bd. of Ed.*, 313 F. Supp. 3d 891, 902 (M.D.Tenn. 2018).

Under the first prong of the *Fry* framework, the Court finds that Plaintiffs could not bring the same claim if the alleged conduct occurred outside of school. Specifically, Plaintiffs argue that BISD is liable for the "acts and omissions" of Rodriguez, who was responsible for J.V.'s care. The gravamen of Plaintiffs' claim, then, is that, had BISD provided adequate educational accommodations, including support services and properly trained staff, the alleged injury would not have occurred. Therefore, the Court finds that Plaintiffs could not bring the same claim if the alleged conduct occurred at a public facility. The injury in this case, as alleged, resulted from the acts and omissions of Rodriguez, a school-appointed paraprofessional responsible for J.V.'s care. The alleged injury did not result from a denial of a public accommodation.

### 2.      *Whether an Adult at School Could Have the Same Grievance?*

Under the second prong of the two-part test, the Court must ask "could an *adult* at the school–say, an employee or visitor–have essentially the same

grievance?" *See Fry*, 137 S. Ct. at 756 (emphasis in original).  Here, an adult at BISD could not bring the same grievance because Plaintiffs' claims primarily challenge BISD's failure to provide educational services.  Specifically, J.V. received an IEP that called for physical and speech therapy, special education, and a personal paraprofessional to assist him with daily activities.  Dkt. No. 55 at 4.  J.V. received these educational and supportive services from BISD precisely because he was an enrolled student with a qualifying disability.  Therefore, an adult visitor or an employee at BISD could not bring the same claim.

## B.    The Gravamen of Plaintiffs' Claims Involves the Denial of a FAPE

When the gravamen of a complaint seeks redress for the denial of a FAPE, a plaintiff must exhaust his or her administrative remedies under the IDEA before bringing claims under § 504 and the ADA.  *See Fry,* 137 S. Ct. at 754–56.  Claims brought under § 504, and the ADA, must be dismissed for failure to exhaust IDEA procedures when the gravamen of those claims involves the denial of a FAPE.  *See id.* at 755.  A FAPE is an education that "confer[s] some educational benefit upon the handicapped child." *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 200, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982).  A FAPE "comprises 'special education and related services'–both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from instruction." *Fry*, 137 S. Ct. at 748–49 (citing 20 U.S.C. §§ 1401(9), (26), (29)).  The Fifth Circuit, interpreting *Fry*, has provided that "the proper hypothetical is along the lines of the following question: 'Could a student without disabilities bring this

same claim?'  If the answer is 'yes,' then the essence of the suit is not the denial of a FAPE." *Doe v. Dallas Indep. Sch. Dist.*, 941 F.3d 224, 229 (5th Cir. 2019).

In answering this question, the Court finds that Plaintiffs could not bring the same claims, if they were brought by a non-disabled student.  The claims involved in this case are based on J.V.'s disability, namely receiving supportive services and assistance of a paraprofessional.  Furthermore, Plaintiffs' decision to originally pursue their cause of action by invoking the IDEA's formal hearing process provides strong support that their claims involve the denial of a FAPE.  *See Fry*, 137 S. Ct. at 757 ("A plaintiff's initial choice to pursue [the IDEA's] process may suggest that she is indeed seeking relief for the denial of a FAPE–with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy.").  Because Plaintiffs' § 504 and ADA claims involve the denial of a free appropriate public education under *Fry*, they require "exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way."  *Id.* at 755.

## C.    The IDEA Requires Exhaustion of Administrative Remedies

Before a plaintiff can bring a claim based on the IDEA, he or she must first exhaust their state administrative remedies.  20 U.S.C. § 1415(l); *see also Gardner*, 958 F.2d at 111 ("[I]t is beyond doubt that the statute provides that a plaintiff must first exhaust the state administrative remedies before bringing an action in federal court.").  "The IDEA's exhaustion requirement serves a number of policy objectives: it allows deference to agency expertise in resolving educational matters; it gives the

agency a first opportunity to correct errors; it presents courts with a more fully developed record; and it prevents parties from deliberately disregarding the statute's comprehensive procedures and remedies." *Marc V. v. North East Indep. Sch. Dist.*, 455 F. Supp. 2d 577, 592 (W.D.Tex. 2006).   A plaintiff cannot circumvent the IDEA's administrative exhaustion requirement by repacking them as claims under some other statute when those same claims could have been brought under the IDEA. *Reyes*, 850 F.3d at 256.   A plaintiff alleging claims under § 504 or the ADA must first exhaust his or her administrative remedies for claims under the IDEA when the relief being sought is also available under the IDEA's remedial scheme.   *See Fry*, 137 S. Ct. at 750.   Conversely, a plaintiff that chooses not to exhaust the IDEA administrative process cannot later claim damages.

> The IDEA is intended to remedy precisely the sort of claim made by [plaintiff]: that a school district failed to provide [plaintiff] with appropriate educational services.   The fact that [plaintiff] seeks damages, in addition to relief that is available under the IDEA, does not enable [plaintiff] to sidestep the exhaustion requirements of the IDEA. Where, as here, a full remedy is available at the time of injury, a disabled student claiming deficiencies in his or her education may not ignore the administrative process, then later sue for damages.

*Polera v. Bd. of Educ. of Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 (2d Cir. 2002).

A court lacks subject matter jurisdiction when a plaintiff fails to exhaust the IDEA's exhaustion requirement.   *Polera*, 288 F.3d at 483.   For the reasons stated above, the Court finds that Plaintiffs have failed to exhaust their state administrative remedies.   Absent an exception, Plaintiffs' failure to exhaust their state administrative remedies deprives this Court of subject matter jurisdiction.   *See*

*Papania-Jones v. Dupree*, Fed. Appx. 301, 303 (5th Cir. 2008); *Wood*, 2010 WL 11417849, at *3.

## D.   Exceptions to the Administrative Remedies Exhaustion Requirement

As previously noted, Plaintiffs' Amended Complaint is the only live pleading before the Court.[3]  However, the Court will address some concerns that, although not formally alleged in the Amended Complaint, were raised in Plaintiffs' Brief.  Issues not raised in the complaint are not properly before the court.  *See Morin v. Moore*, 309 F.3d 316, 328 (5th Cir. 2002) ("[Plaintiffs] raise this issue for the first time in their reply brief, it must be waived."); *Gill v. Petro. Co-Ordinators, Inc.*, No. 6:14-CV-02869, 2016 WL 4574169, at *4 (W.D.La. Aug. 31, 2016) ("A claim not raised in the complaint is not properly before the court.") (citing *Fisher v. Met. Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir. 1990)).  In their Brief, Plaintiffs contend that the Rule 11 Agreement signed between the parties satisfies the exhaustion requirement.  Dkt. No. 62 at 15–16.  In the alternative, Plaintiffs contend that they do not need to exhaust their state administrative remedies because they are only raising non-IDEA claims.  *Id.*  In its Response, BISD argues that the Rule 11 Agreement forecloses Plaintiffs' attempts to raise IDEA and § 504 claims in federal court.  Dkt. No. 65 at 2.

---

[3] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F. 3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir. 1985)).  Only matters raised in the live pleadings are formally before the court as opposed to claims outside the live pleadings.  *See Country Club of Meadowlakes, Inc. v. City of Meadowlakes Texas*, No. A-07-CA-185-SS, 2017 WL 9710031, at *4 (W.D.Tex. Oct. 22, 2007) ("The Court will not exercise jurisdiction over this case on the basis of a claim that is not part of the live pleadings.").

1.    *Rule 11 Agreement.*

A settlement agreement reached during the resolution meeting or mediation prior to the impartial due process hearing is enforceable in federal court.  20 U.S.C. §§ 1415(e)(2)(F), (f)(1)(B)(iii); *see also El Paso Indep. Sch. Dist. v. Richard R.*, 591 F.3d 417, 426–27 (5th Cir. 2009) (same).  In this case, the parties held a mediation meeting on September 21, 2017.  Dkt. No. 63 at 36, 70.  The parties subsequently entered into a Rule 11 Agreement on November 21, 2017, prior to the start of the impartial due process hearing.  *Id.* at 17.  In the Rule 11 Agreement, the parties stipulated that the "gravamen" of Plaintiffs' claims addressed "civil rights violations" and not IDEA violations.  *See* Dkt. No. 63 at 18.  The Plaintiffs also agreed that BISD provided J.V. with a free appropriate public education "pursuant to IDEA and Section 504."  *Id.* The Rule 11 Agreement further provided that "the parties note that a Federal District Court or the 5th Circuit Court of Appeals could nevertheless require Petitioners to first exhaust any such claims."  *Id.*  Therefore, the parties stipulated that Plaintiffs' non-suit would seek a dismissal without prejudice.  *Id.*

Here, Plaintiffs contend that the Rule 11 Agreement and BISD's own stipulation satisfies the exhaustion requirement.  Dkt. No. 62 at 14.  Plaintiffs are incorrect.  A plaintiff fails to exhaust his administrative remedies when the SEHO has not rendered a final decision on the merits.  *See Reyes*, 850 F.3d at 256  ("The district court was correct in holding that [the Plaintiff] failed to exhaust his Rehabilitation Act claims . . . because he did not address them in his prehearing request for relief or otherwise obtain any decision on them from the hearing officer.").

In this case, prior to the due process hearing, Plaintiffs filed their Rule 11 Agreement to voluntarily dismiss their claims. *See* Dkt. No. 63 at 14. As part of the Rule 11 Agreement, the parties agreed that Plaintiffs' claims alleged civil rights violations. No liability was assessed to any party under the Rule 11 Agreement; instead, the parties agreed that BISD provided a FAPE, and that Plaintiffs' claims would be better addressed in federal court. Said in another way, Plaintiffs believed that their claims did not involve the denial of a FAPE and fell outside of the IDEA; they made the strategic calculation to voluntarily dismiss their claims at the administrative level. *See Fry*, 137 S. Ct. at 757. Critically, the SEHO was prevented from making any findings, and he did not issue a final decision regarding Plaintiffs' claims. Exhaustion of state administrative remedies requires more than a pleading of claims, it requires "findings and decision by the administrative body" on the merits. *See Reyes*, 850 F.3d at 256 (citing 20 U.S.C. § 1415(g)). Plaintiffs have failed to submit, and the Court has not found, an administrative decision on the merits issued by the SEHO. A court does not have subject matter jurisdiction simply based on the parties' waiver or consent. *See Howery*, 243 F.3d at 919. The Court, then, finds that the Rule 11 Agreement does not satisfy the exhaustion requirement.

### 2. *Other Exceptions to the Exhaustion Requirement.*

In their Brief, Plaintiffs also argue that, under certain exceptions, they do not need to exhaust the IDEA's administrative process. Plaintiffs claim that judicial estoppel, futility, and inadequacy supports the proposition that exhaustion of state administrative remedies would not address their claims or provide adequate relief.

Plaintiffs, then, seek to by-pass the administrative process. As discussed below, the Court finds that no exceptions exist to dispense with the Plaintiffs' required exhaustion of the IDEA's administrative process.

### a.   Judicial Estoppel

Plaintiffs argue that judicial estoppel excuses the exhaustion of state administrative remedies. "Judicial estoppel is a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position." *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988). The purpose of judicial estoppel is "to protect the integrity of the judicial process" by "prevent[ing] parties from playing fast and loose with the courts to suit the exigencies of self-interest." *Id.* (quoting *USLIFE Corp. v. U.S. Life Ins. Co.*, 560 F. Supp. 1302, 1304–05 (N.D.Tex. 1983)) (internal quotation marks omitted). Judicial estoppel has three requirements: "(1) the party is judicially estopped only if its position is clearly inconsistent with the previous one; (2) the court must have accepted the previous position; and (3) the non-disclosure must not have been inadvertent." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 335 (5th Cir. 2004) (citing *Scarano v. Cent. R.R. Co.*, 203 F.2d 510, 513 (3d Cir. 1953)). Plaintiffs cite the Rule 11 Agreement to show that BISD previously agreed that Plaintiffs are not required to exhaust their administrative remedies because they allege only non-IDEA claims. It is this change in BISD's position, Plaintiffs contend, that constitutes judicial estoppel. *See* Dkt. No. 62 at 16–17. Plaintiffs' argument is misplaced; the Court is raising subject matter jurisdiction, not BISD.

b.    Futility

Plaintiffs also argue that exhaustion of state administrative remedies would be futile because the SEHO has limited jurisdiction.  "The Supreme Court has held that futility in pursuing administrative relief is an exception to exhaustion under IDEA." *M.L. v. Frisco Indep. Sch. Dist.*, 451 Fed. Appx. 424, 427 (5th Cir. 2011) (citing *Honig v. Doe*, 484 U.S. 305, 327, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988)).  "To show futility, a plaintiff must demonstrate that adequate remedies are not reasonably available or that the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process."   *Id.* at 428 (quoting *Coleman v. Newbaugh Enlarged City Sch. Dist.*, 503 F.3d 198, 205 (2d Cir. 2007) (internal citation and quotation marks omitted)).

In support of their futility argument, Plaintiffs contend that the SEHO could only provide relief for their claims under the IDEA and lacked jurisdiction to hear all their other claims.  Dkt. No. 62 at 19.  Plaintiffs are incorrect for several reasons.  First, a futility argument would be appropriate if Plaintiffs plead claims alleging only discrimination.  The Court finds that Plaintiffs' Amended Complaint contains IDEA claims that require exhaustion regardless of whether the SEHO can provide relief for their other claims.  *See McMillen v. New Caney Indep. Sch. Dist.*, 939 F.3d 640, 648 (5th Cir. 2019); *Doe*, 194 F. Supp. 3d at 559 ("[A] plaintiff cannot avoid exhaustion requirements of the IDEA by repacking the claims under some other statute.") (internal citation and quotation marks omitted).  Second, the Fifth Circuit recently held that the "IDEA's exhaustion requirement applies to plaintiffs who seek

damages" and that courts should "focus on the conduct the plaintiff complains about," instead of the relief being sought, to determine whether exhaustion of state administrative remedies is appropriate.    *McMillen,* 939 F.3d at 648.    Third, exhaustion is required when a complaint alleges exclusion and deprivation of educational benefits, even though a plaintiff alleges discrimination in other parts of the complaint. *See Smith*, 895 F.3d at 569.   And Fourth, exhaustion "is not futile because it would allow the agency to develop the record for judicial review and apply its expertise to the plaintiff's claims." *J.M. v. Francis Howell Sch. Dist.*, 850 F.3d 944, 951 (8th Cir. 2017).  The Court finds that Plaintiffs have failed to demonstrate futility in exhausting their state administrative remedies.

> c.    Inadequate Relief

Plaintiffs further argue that any relief that the SEHO could provide through the administrative process would: (1) fail to redress J.V.'s physical injury; or (2) provide inadequate monetary relief.  Dkt. No. 62 at 19.  A plaintiff must exhaust their state administrative remedies regardless of whether the IDEA provides such available relief.  *See McMillen,* 939 F.3d at 648 ("We therefore hold that the IDEA's exhaustion requirement applies to plaintiffs who seek damages for the denial of a free appropriate public education.  Because [plaintiff] did not seek relief through the IDEA administrative process, this lawsuit was properly dismissed.").  A plaintiff's request for money damages does not overcome the IDEA's exhaustion requirements.  *See Ripple v. Marble Falls Indep. Sch. Dist.*, 99 F. Supp. 3d 662, 690 (W.D.Tex. 2015) (citing cases).  The fact that Plaintiffs seek damages is not an exception to the

exhaustion requirement.  The Fifth Circuit recently noted that "[m]ost circuits hold that the IDEA requires plaintiffs who were denied a free appropriate public education to exhaust regardless of the remedy they seek" and held that "the IDEA's exhaustion requirement applies to plaintiffs who seek damages for the denial of a free appropriate public education." *McMillen*, 939 F.3d at 646, 648.  Plaintiffs, then, have failed to show that an exception to the exhaustion requirement applies in this case. Absent an exception, Plaintiffs must fully exhaust their state administrative remedies before filing suit in federal court.

## IV.   Conclusion

For the reasons provided above, the Court finds that it lacks subject matter jurisdiction.   Plaintiffs' Amended Complaint is **DISMISSED WITHOUT PREJUDICE** to allow Plaintiffs to exhaust their state administrative remedies.

**SO ORDERED.**

**SIGNED** on this **22nd** day of June, 2020, at Brownsville, Texas.

_____
Ignacio Torteya, III
United States Magistrate Judge

24/24